**IN THE UNITED STATES DISTRICT COURT FOR**

**THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DAMON ADAMS<br>8304 Kingsbench Ct.,<br>White Plains, MD  20695 | ) | |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | Case No.: _____ |
| BOB CAMERON, | ) | |
| GERALD DONOVAN, | ) | |
| MARY DONOVAN, | ) | |
| JEFFREY SEIBOLD, | ) | |
| MARK GIANGIULIO, | ) | |
| *And* | | |
| ROD AND REEL, INC.<br>4165 Mears Avenue<br>Chesapeake Beach, MD  20732-5116<br>*Defendants.* | )<br><br><br>) | |

**COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND**

1. Plaintiff Damon Adams ("Damon") was an employee of Defendant at Defendant's

   Chesapeake Beach Maryland location from May 19, 2018 to October 12, 2018.

2. Defendant Rod and Reel, Inc. ("RRI") is a corporation that operates a restaurant and resort of

   the same trade name in Chesapeake Beach, Maryland.

10

3. Defendants Bob Cameron, Gerald Donovan, Mary Donovan, Jeffrey Seibold, and Mark Giangiulio are officers and/or owners of RRI who intentionally made the operative decisions leading to the allegations discussed herein.

4. During the latter portion of Damon's employment, he lived in RRI-owned employee housing at 3811 27th Street, Chesapeake Beach Rd., Chesapeake Beach Maryland ("Subpar Property").

## COUNT I – BREACH OF LEASE

5. Damon incorporates the preceding paragraphs into the instant Count.

6. The Subpar Property was never habitable during Damon's tenancy, and violated the Calvert County, Maryland code in several aspects related to sanitation. Violations Damon experienced from the start of his tenancy until its completion included rat infestation, rat feces, rat urine, mold infestation, and other unsanitary conditions.

7. When leasing the Subpar Property to Damon, RRI refused to provide Damon with a copy of his lease, and inserted provisions in his lease that provided for his immediate eviction at the discretion of RRI management. These actions are both prohibited by the Maryland Real Property Code. *Md. Code, Real Property, §8-208.*

## COUNTS II, III – RETALIATORY ACTION (Md. Code, Real Property, § 8-208.1), AND WRONGFUL TERMINATION

10

8. Damon incorporates the preceding paragraphs into the instant Counts.

9. Damon was terminated from employment at RRI on October 12, 2018, immediately after (and as a direct result of) reporting unsanitary conditions at the Subpar Property.

COUNTS IV, V – UNLAWFUL EVICTION (Md. Code, Real Property, §8-216), AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

10. Damon incorporates the preceding paragraphs into the instant Count.

11. Damon was forcefully evicted on October 13, 2018, with the involvement of security guards and police officers contracted to RRI.

12. Before the eviction, Damon's employer knew he was emotionally vulnerable to external stress, due to a recent mental breakdown that caused him to stop working temporarily, known suicidal urges, and a recent carjacking victimization.

13. Damon's eviction at the time of his termination was illegal under Maryland law, in addition to being extraordinarily stressful and sufficiently "outrageous" from the standpoint of assessing punitive damages.

COUNTS VI - X – RACIAL DISCRIMINATION IN EMPLOYMENT AND IN HOUSING

(Separate Counts:  42 USC § 3604, 42 USC § 1981, 42 USC 2000e, Md. Code, State Government Article, §20-602, Md. Code, §20-702)

10

14. Damon incorporates the preceding paragraphs into the instant Counts.

15. Damon's treatment is part of a pattern of ongoing mistreatment, harassment, and racial discrimination against African-American employees at RRI ("Black Staff"), which includes one or more of the following factors, that intentionally and/or negligently have a disparate impact in favor of RRI's non-African-American employees who are similarly situated (hereafter "White Staff"):

   a. Black Staff are rarely allowed to live on RRI's premises, while the White Staff routinely live there;

   b. On the limited occasions that Black Staff are allowed to live on RRI's Premises, they are exclusively restricted to the Subpar Property, which is known to be unsanitary and unfit for human habitation, and which has never been properly maintained.

   c. Unlike the White Staff, Black Staff leases contain draconian provisions, such as an absolute ban on guests and smoking, and the threat of immediate eviction.

   d. White Staff routinely receive customer-facing jobs, as opposed to the cooking and cleaning jobs that almost all Black Staff receive.

   e. Black Staff, unlike White Staff, were subject to immediate eviction if they lived in employee housing.

   f. Black Staff, unlike White Staff, often have their hours reduced without notice or explanation.

16. As a result of Defendant's conduct, as discussed in all of the preceding paragraphs, Damon has suffered from substantial damages including but not limited to the following: extreme

10

emotional distress, physical afflictions such as bedbug bites, lost past, present, and future earnings, lost rent, lost attorney fees and costs.

WHEREFORE, Damon seeks the following relief totaling $2,500,000.00, which include the following:

1.  Compensatory damages, including front pay, back pay, rental payment reimbursement, and costs;

2.  Exemplary and statutory damages as allowed by statute;

3.  Attorney's fees;

4.  Such other relief as this Court deems necessary.

/s/ Kerry J. Davidson

_____

Kerry J. Davidson, Esq.
Law Office of Kerry J. Davidson
300 East Lombard Street, Suite 840-112
Baltimore, MD   21202
(240) 394-6330 (voice)
(866) 920-1535 (fax)
Bar No.: 010120
December 23, 2020

10